[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
DATE OF SENTENCE JUNE 11, 1998 DATE OF APPLICATION JUNE 26, 1998 DATE OF APPLICATION FILED JULY 8, 1998 DATE OF DECISION DECEMBER 10, 2002
Application for REVIEW OF SENTENCE imposed by the Superior Court, Judicial District of Tolland, Docket Number CR97 64183
 Timothy Liston, For the State of Connecticut Assistant States Attorney
Moira Buckley, Esquire For the Petitioner
SENTENCE AFFIRMED
 BY THE DIVISION
The Petitioner was convicted by a jury of the crimes of burglary in the first degree as an accessory in violation of General Statutes §§ 53a-8
and 53a-101 (a) (2), conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 and 53a-101 (a) (2), two counts of assault in the third degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-61 (a) (1) and (2), conspiracy to commit assault in the third degree in violation of General Statutes §§ 53a-48
and 53a-61 (a) (1) and hindering prosecution in violation of General Statutes § 53a-166.
The following facts are reproduced from the Appellate Court's decision in State v. Liebowitz, 65 Conn. App. 788 (2001):
 The defendant, Michael Liebowitz, was convicted after a jury trial of burglary in the first degree as an accessory in violation of General Statutes §§ 53a-8
CT Page 15334-hv and 53a-101 (a) (2), conspiracy to commit burglary in the first degree in violation of CGS §§ 53a-48 and 53a-101 (a) (2), two counts of assault in the third degree as an accessory in violation of CGS §§ 53a-8
and 53a-61 (a) (1) and (2), conspiracy to commit assault in the third degree in violation of §§ 53a-48
and 53a-61 (a) (1) and hindering prosecution in violation of CGS § 53a-166.
 The jury reasonably could have found the following facts. The defendant and Loni Rocheleau, one of the victims, began dating in August, 1995. In August, 1996, their relationship ended. Rocheleau and Hector Soto, the other victim, began dating in December, 1996, and living together in an apartment in Tolland in August, 1997.
 The relationship between Soto and Rocheleau angered the defendant, which anger led the defendant to harass and threaten Soto. On September 28, 1998, the defendant, over the telephone, asked Soto if he wanted to fight him. The defendant then told Soto that he still cared for Rocheleau and that he would kill for her. Soto asked the defendant to leave them alone. Following that conversation, Soto believed that the situation had been defused [sic] and did not believe that the defendant still harbored resentment toward him and Rocheleau.
 On September 29, 1998, the defendant asked Peter Pietraroia and Brian Araujo to come to his house in Wethersfield. The defendant also invited Kenny Johnson[1] to his house. At his house, the defendant asked Pietraroia to give Johnson a ride to Tolland to assault Soto. According to Pietraroia's testimony, he believed that the defendant was frustrated, upset, angry, bitter and determined to carry through with the assault. Pietraroia testified that he was afraid to say no.
 Between 9 and 10 p.m., the four men went to a bar in Hartford to discuss the plan. After some discussion, the four men agreed that Pietraroia would drive Johnson to Tolland, that Johnson would knock on the door or ring the doorbell and hit Soto in the mouth, CT Page 15334-hw that Araujo would shout that Soto was to stay away from his sister in Mansfield and that Pietraroia would ensure that Johnson escaped without incident. After the assault, Pietraroia was to drive Johnson and Araujo back to the defendant's house.
 After developing the plan, the four men returned to the defendant's house around 10 p.m. The defendant and Johnson retrieved T-shirts from inside the defendant's house to use as masks and then got into the defendant's vehicle. Pietraroia and Araujo, not knowing the route, following the defendant's vehicle, which the defendant was operating, to Tolland. Once near Soto's and Rocheleau's apartment, Johnson exited the defendant's automobile and entered Pietraroia's automobile. The defendant instructed the others to return to his house after the assault and he then departed. Pietraroia backed his vehicle into Soto's driveway to ensure a quick escape. Johnson and Pietraroia donned the T-shirts as masks, but Araujo did not wear one because Rochealeau had never seen him before.
 The three men then approached the unlit apartment. Soto and Rocheleau had retired early that evening and neither responded to the doorbell or the knock at the door. The three then tried the door, which was unlocked. Johnson entered first, and Pietraroia and Araujo followed. They made their way through the dark apartment into the bedroom where Johnson turned on the bedroom light. Johnson hit and stabbed Soto, twice in the left arm, once on his side and once in the leg. Rocheleau suffered a stab wound to the knee. Araujo yelled leave my sister alone and stay out of Mansfield. Soto jumped up, and Pietraroia hit him in the forehead to prevent Soto from grabbing him.
 Following the attack, the three men fled the apartment. Rocheleau and Soto telephoned the police, who arrived at the scene around 11 p.m. Rocheleau later identified a photograph of Araujo as one of the men who was in the bedroom during the attack.
 Pietraroia drove Johnson and Araujo near the defendant's house and dropped them off. He gave his CT Page 15334-hx T-shirt to Johnson and then left. Johnson and the defendant talked in the kitchen while Araujo heard the defendant say "I told you to beat him up, not hack him up," and thought the defendant seemed shocked. The defendant then directed Johnson to back the defendant's automobile out of the garage so that he could take Johnson and Araujo home. As Johnson was backing the vehicle out of the garage, Officer John Salvatore of the Wethersfield police department arrived at the defendant's house and arrested Johnson and Araujo. The defendant then emerged from the house, and Salvatore arrested him as well.
 At the police station, the defendant gave several statements to the police. According to his statements, the defendant instructed the others only to slap Soto around and not to hurt Rocheleau. He also informed the police that after Johnson and Araujo had returned to his house, he cleaned and hid the knife and the bloody clothes. The defendant consented to a search of his attic, where he claimed to have hidden the knife and clothes, but the police recovered neither the T-shirts nor the weapon.
 According to Araujo's testimony, Johnson, Pietraroia and the defendant discussed the plan at the bar. Because Araujo was not twenty-one years old, he could not sit at the bar where the other three had drinks. For that reason, he testified that he was unaware of the plan to assault Soto. Both Pietraroia and Araujo testified at trial that the plan included only punching Soto, not breaking into the apartment or injuring Rocheleau. Pietraroia also testified that the defendant initially admitted to showing the knife to Johnson in the lead car en route to the apartment in Tolland.
 The state charged the defendant in a nine count information. The jury found the defendant guilty of six of those counts. In addition to the crimes of which the jury found the defendant guilty, the defendant pleaded guilty to a part B information of committing crimes while released on bond in violation of § 53a-40b. The court sentenced the defendant to a total effective sentence of twenty-seven years, to CT Page 15334-hy run consecutively to a sentence previously imposed.
Counsel for the Petitioner argued at the hearing the sentence imposed is inappropriate and excessive.[2] Counsel urged the panel to consider the profoundly dysfunctional family background of the Petitioner as well as the Petitioner's mental health history and treatment. Finally, counsel emphasized the Petitioner can be rehabilitated.
Counsel for the state emphasized the prior criminal history of the Petitioner. Counsel for the state urged the panel to consider the fact that these crimes were committed when the Petitioner had been released on bail, and urged the panel to affirm the trial court's sentence.
The Petitioner, in his remarks to the panel, expressed his rehabilitative efforts while incarcerated and his innocence.
Pursuant to the Connecticut Practice Book § 43-23 et seq., the Sentence Review Division is limited in the scope of its review. The Division is to determine whether the sentence imposed "should be modified because it is inappropriate or disproportionate in light of the nature of the offense, the character of the offender, the protection of the public interest and the deterrent, rehabilitative, isolative and denunciatory purposes for which the sentence was intended."
The Division is without authority to modify a sentence except in accordance with the provisions of Connecticut Practice Book § 43-28
and Connecticut General Statues § 51-94 et seq.
Counsel for the Petitioner argues that the Petitioner's sentence is disproportionate in light of other sentences imposed for similar offenses by other courts. Counsel has cited nine cases in support of the Petitioner's position. Merely comparing the sentence imposed on one defendant to the sentences imposed on other defendants, convicted of similar offenses, does not, in itself, demonstrate a disparity in sentencing. The comparison of ultimate sentences imposed does not take into account the many salient sentencing factors unique to the particular defendant, which must be considered by the sentencing judge fashioning a sentence to fit the crime. A disparity in sentences can result in serious injustice and loss of respect for the Criminal Justice System. The Petitioner has failed to demonstrate disparity in the sentence imposed in this case. The salient factors related to the sentencing of the Petitioner were clearly considered by the trial court.
The Petitioner's criminal conduct has been characterized by persistent aggressive behavior with heedless indifference to the consequences. The CT Page 15334-iz record reveals that the trial court imposed the sentence of incarceration based upon the nature and circumstances of the crime, the history and the character of the Petitioner.
The trial court at sentencing stated: "There is a long history in this defendant of violence and antisocial behavior. . . ." The trial court further stated the Petitioner is a danger now to other people and society.
In reviewing the records as a whole, the Division finds that the sentencing court's actions were in accordance with the parameters of Connecticut Practice Book § 43-23, et seq.
The sentence imposed was neither inappropriate nor disproportionate.
The sentence is AFFIRMED.
 ___________________, J. Holden
 ___________________, J. Ford
 ___________________, J. Miano
Miano, J., Ford, J., and Holden, J. participated in this decision.